MORRIS v. LOUISVILLE & N. R. CO. et al.

(Circuit Court, N. D. Georgia. January 12, 1910.)

**1. REMOVAL OF CAUSES (§ 49\*)—SEPARABLE CONTROVERSY—JOINT CAUSE OF ACTION.**

Where the right to remove a cause from a state court depends upon whether the declaration states a joint cause of action against the defendants, that question should be determined by the law of the state.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 95–97; Dec. Dig. § 49.\*]

**2. REMOVAL OF CAUSES (§ 49\*)—SEPARABLE CONTROVERSY—JOINT CAUSE OF ACTION.**

Under the rule of decision in Georgia that, while an agent is not liable to third persons for mere nonfeasance, he is so liable for misfeasance, and that misfeasance may involve to some extent the idea of not doing that which he has undertaken to do for his principal, whether or not a declaration in an action by an employé against railroad companies to recover for an injury resulting from the defective condition of a car, which also joins as defendants the car inspectors of the companies on an allegation that it was their duty to inspect all cars, but that they failed to inspect such car, states a joint cause of action against the companies and such inspectors, which would prevent a removal of the cause by the companies, is a question of such doubt that the federal court should not take jurisdiction on removal.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 97; Dec. Dig. § 49.\*

Removal of causes, separable controversy, see notes to Robbins v. Ellenbogen, 18 C. C. A. 86; Mecke v. Valleytown Mineral Co., 35 C. C. A. 155.]

At Law. Action by W. A. Morris against the Louisville & Nashville Railroad Company, the Atlantic Coast Line Railroad Company, C. M. Dorster, P. M. McGuire, and others. On motion to remand to state court. Motion sustained.

Westmoreland Bros., for plaintiff.
McDaniel, Alston & Black, for defendants.

NEWMAN, District Judge. This suit was brought in the superior court of De Kalb county, Ga., and removed from that court to the Circuit Court of the United States by the two railroad corporations. The petition for removal alleges:

"Your petitioners show that said cause contains and that there exists a controversy wholly between citizens of different states. Your petitioner the Louisville & Nashville Railroad Company was at the time of the commencement of the suit and still is a corporation created and existing under the laws of the state of Kentucky, and was and is a resident, citizen, and inhabitant of said state of Kentucky. Your petitioner the Atlantic Coast Line Railroad Company was at the time of the commencement of the suit and still is a corporation created and existing under the laws of the state of Virginia, and was and is a resident, citizen, and inhabitant of said state of Virginia. Your petitioners further show that the plaintiff was at the time of the commencement of the suit and now is a citizen of the state of Georgia and of the Northern district thereof.

"Your petitioners show that there exists in said cause a separable controversy which is wholly between citizens of different states; that the said controversy is between the plaintiff and your petitioners, and that the same is sep-

---

arable and distinct from any right, claim, or controversy asserted against the other defendants, to wit, C. M. Dorster and P. M. McGuire.

"Your petitioners show that said suit shows upon its face that no cause of action exists against the resident defendants, Dorster and McGuire, for the reason that the acts of omission and neglect charged against them were not their acts as agents of your petitioners, the principals, but were the acts of your petitioners themselves, and were the acts of principals.

"Your petitioners show that the obligation to keep in repair machinery and instrumentalities which include the car which is alleged by the plaintiff to have contained a defect which caused his injury was a duty incumbent upon them as plaintiff's joint master, and that such duty could not be delegated by them to agents, but that the same continued to be their own duty.

"Your petitioners therefore show that the acts and omissions of Dorster and McGuire were in law their acts and omissions, and that the said Dorster and McGuire are charged with no act in the pleading which will enable plaintiff to maintain a joint action against them and petitioners.

"Your petitioners show, therefore, that for the reasons above set forth the said C. M. Dorster and P. M. McGuire were fraudulently joined in said suit, and for the purpose of preventing the removal thereof by your petitioners to the Circuit Court of the United States for the proper district.

"Your petitioners insist that the pleading shows upon its face that the act complained of and ascribed to said Dorster and McGuire was their act, and that in performing such act the said Dorster and McGuire were each, respectively, your petitioners' alter ego.

"Your petitioners aver that said petition upon its face states no cause of action against said Dorster and McGuire."

In the petition for removal it is alleged that the plaintiff was at the time of the commencement of the suit and still is a citizen of the Northern district of Georgia, and the plaintiff's declaration shows that the defendants Dorster and McGuire are both residents of Fulton county, Ga., and consequently of this district.

It is perfectly clear in this case, I think, that there is no separable controversy between the railroad companies and the individual defendants, Dorster and McGuire, except so far as it may be involved in what is to be hereinafter stated. The real question is—and that is the question discussed at the hearing on this motion to remand—whether the plaintiff has any cause of action at all against Dorster and McGuire.

The case made by the declaration is: That the plaintiff was in the employ of the railroad companies as switchman and coupler, being a member of a switching crew, and part of his duties were to apply and release brakes on freight cars in making up and distributing trains in the railroad companies' yards. That on the afternoon of the 5th of December, 1908, it became necessary for the plaintiff to go upon the top of a cut of cars, which were being distributed by the crew, to apply the brakes, and after applying the brakes it became necessary for him to descend hurriedly from the top of the car to catch another cut of cars which had been kicked, in order to apply the brakes to stop them, and as he was descending from one of the cars of the first cut it was necessary for him to support himself in the descent by taking hold of the grab iron or handhold on top of the car, and as he did so, and was in the act of descending down the ladder on the side, the handhold pulled out, throwing him to the ground, a distance of 12 or 15 feet, by which he received severe injuries, etc. That the car the plaintiff was descending from at the time he was injured—

"was a car of the Southern Railway Company, the number of which was 16638, and had been brought into the Georgia Railroad yards [the defendants' yards] some time during the day of December 5, 1908, and that the grab iron pulled out by reason of the fact that the woodwork in which the bolts were fastened was so decayed from age and want of repair as not to hold, and that this condition of the car should have been discovered by the defendants by a proper inspection, and the defendants either knew or ought to have known of the defective and dangerous condition of the fastenings of the grab iron. That the defendants C. M. Dorster and P. M. McGuire were at the time of plaintiff's injuries in the employ of the defendant railroad companies in the capacity of car inspectors by day, that they went on duty at 6 o'clock in the morning and went off duty at 6 o'clock in the afternoon, and as such it was their duty to have inspected this Southern Railway car as soon as it reached the yards of the Georgia Railroad [the defendants' yards], and this duty they failed and neglected to perform, as by proper inspection they would have discovered the defective condition of the top of the car and this grab iron, and the danger incident thereto in its use by the railroad servants. That the plaintiff was without fault in the premises."

The contention on the part of the railroad companies is that the obligation of the master to furnish his servants a safe place to work and safe machinery and tools with which to work is a nondelegable duty, and that therefore the act of Dorster and McGuire was the act of the master, and not such as they would be liable for personally to others. I do not think the fact that a duty imposed on the master is a nondelegable one would prevent the servant, whose negligence combined with that of the master in bringing about and causing an injury to an employé, from being joined in action jointly with the master.

The main contention, however, and the one which raises the difficulty in the case, is that according to the allegations of the declaration it is charged against Dorster and McGuire that they wholly failed to inspect the foreign car in the possession of the railroad corporations for which they were working, and that this was a mere nonfeasance for which the servants would not be personally liable to third persons. Undoubtedly the authorities support the contention that for a mere nonfeasance in the performance of a duty of the master the servant would not be liable to a third person, and if it were clear that this was only a nonfeasance, and that the failure of Dorster and McGuire might not be held, especially under the Georgia decisions, to be a misfeasance, I think the court should retain this case and refuse to remand it. This question should be determined, I think, by the decisions of the courts of this state, because the right to join these individual defendants with the railroad corporations in the action originally brought in the state court would depend upon the state law and state construction.

The case of Southern Railway Company v. Grizzle, 124 Ga. 735, 53 S. E. 244, 110 Am. St. Rep. 191, is a well-considered case by the Supreme Court of Georgia, and in the opinion of Justice Cobb the whole matter is thoroughly discussed. I think that, as urged by counsel for the railroad companies, that case, in some of its features, is easily distinguishable from this case. It was the joinder of an engineer engaged in the running of a train of the Southern Railway Company, which killed the plaintiff's husband at a public road crossing. In that case the engineer not only failed to blow the whistle, but con-

tinued to run the train at a high rate of speed over the crossing, so that it might easily have been said that there was positive negligence on his part. But an extract from the opinion in that case will, I think, show more satisfactorily what is necessary to say about the rule in Georgia:

"An agent is not ordinarily liable to third persons for mere nonfeasance. Kimbrough v. Boswell. 119 Ga. 201 [45 S. E. 977]. An agent is, however, liable to third persons for misfeasance. Nonfeasance is the total omission or failure of the agent to enter upon the performance of some distinct duty or understanding which he has agreed with his principal to do. Misfeasance means the improper doing of an act which the agent might lawfully do; or, in other words, it is the performing of his duty to his principal in such a manner as to infringe upon the rights and privileges of third persons. Where an agent fails to use reasonable care or diligence in the performance of his duty, he will be personally responsible to a third person who is injured by such misfeasance. The agent's liability in such case is not based upon the ground of his agency, but upon the ground that he is a wrongdoer, and as such he is responsible for any injury he may cause. When once he enters upon the performance of his contract with his principal, and in doing so omits, or fails to take reasonable care in the commission of, some act which he should do in its performance, whereby some third person is injured, he is responsible therefor to the same extent as if he committed the wrong in his own behalf. See 2 Clark & Skyles on Agency, 1297 et seq. Misfeasance may involve, also, to some extent the idea of not doing; as where an agent engaged in the performance of his undertaking does not do something which it is his duty to do under the circumstances, or does not take that precaution or does not exercise that care which a due regard to the rights of others requires. All this is not doing; but it is not the not doing of that which is imposed upon the agent merely by virtue of his relation, but of that which is imposed upon him by law as a reasonable individual in common with all other members of society. It is the same not doing which constitutes actionable negligence in any relation."

It will be seen that the court says that misfeasance may involve to some extent the idea of not doing. In the present case the employés failed to inspect, and as a consequence of that, according to the allegations of the declaration, turned over to Morris a car with an imperfect and dangerous handhold. Whether, therefore, the reasoning of the Grizzle Case would make such "not doing" as is alleged against the individual defendants in this case a misfeasance, for which they would be liable to a third person, I am not prepared to say.

In the case of Southern Railway v. Rowe, 2 Ga. App. 557, 59 S. E. 462, this same question arose. The Rowe Case was subsequent to the Grizzle Case, and in that the opinion in the Grizzle Case is commented upon by Judge Russell, who delivered the latter opinion. I think, in view of the language of the court in the last decision, that it is entirely probable that they would hold that the acts of the individuals in this case constituted a misfeasance, and that consequently they were liable for the injury, jointly with the railroad companies.

To decide this question here would be really to decide the plaintiff's case, as under his declaration he sets up a joint cause of action, and, in my opinion, unless it was perfectly clear that there was no cause of action against the individual defendants, the case should not be held removable upon that ground.

While the law is well settled that for mere nonfeasance a servant, while engaged in the master's work, would not be liable to a third per-

son, and for misfeasance he would be, the application of the principle is not always easy, and is often very difficult, as the authorities on the question show. They are stated by Justice Cobb in the Grizzle Case, and also by Judge Russell in the Rowe Case, and need not be further commented on here.

The question is, at least, too doubtful to justify the retention of the case in this court. Jurisdiction here should be clear. If there is any doubt about it, the case should be remanded. An order may be taken remanding this case to the state court from which it was removed.